UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

PATRICK WILSON,

          Plaintiff,                     Case No. 1:18-cv-1138

v.                                           Honorable Paul L. Maloney

CORIZON HEALTH, INC. et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendant Mulnix for failure to state a claim. The Court also will deny Plaintiff's motion for preliminary injunction (ECF No. 3).

## Discussion

    I.        Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.

The events about which he complains, however, occurred at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan. Plaintiff sues Corizon Health, Inc., together with the following RMI healthcare officials employed by Corizon: Doctors (unknown) Howard and (unknown) Sices; Nurse Practitioner Corey Grahn; Registered Nurses (RNs) Barbara Mulnix and (unknown) Randal; and Health Care Unit Manager (unknown) Deeren.

Plaintiff alleges that, on October 27, 2017, he severely twisted his ankle while walking in the prison gym. Plaintiff reports that he felt a tearing in his ankle and experienced excruciating pain. Plaintiff was seen by a nurse later that day, and he was issued a medical detail for an ace wrap, crutches, ice, and meals in his cell.

On November 9, 2017, Plaintiff was seen by Defendant Howard. After examination, Dr. Howard concluded that the ankle was only sprained. Howard placed Plaintiff in a soft cast and scheduled an x-ray.

Plaintiff was x-rayed on November 13, 2017. On November 15, Plaintiff was seen by a nurse, who examined his ankle and informed Plaintiff that his x-ray showed no fracture. The nurse advised Plaintiff to continue his rehabilitation exercises and to take Tylenol for pain.

Because Plaintiff continued to complain about extreme ankle pain and an inability to place weight on his ankle, Plaintiff was seen by Defendant Dr. Sices on December 14, 2017. Plaintiff requested an MRI, but Defendant Sices told him that he did not need an MRI, because it was only a sprained ankle. When Plaintiff responded that it was more than a sprained ankle, Sices got angry and took away Plaintiff's authorization for crutches. Plaintiff was forced to walk on his damaged ankle, but severe pain prevented him from attending his call-outs. Plaintiff continued to

write medical kites, seeking pain relief and necessary medical equipment. He received no response.

On January 5, 2018, Plaintiff was seen by a nurse. By this time, the pain had radiated up his leg to the groin area. On January 30, 2018, Plaintiff hobbled to the med-line, where Nurse Slusher told him that he was scheduled to be examined by Defendant Howard on February 1, 2018. When Plaintiff was seen by Defendant Howard on February 1, she noticed that Plaintiff's ankle was excessively swelled, despite the passage of 12 weeks since the injury. Defendant Howard called over Defendant Grahn, asking if Grahn thought they should order a CT scan. Grahn replied that Plaintiff needed an MRI. Howard ordered an MRI. At a follow-up visit on February 5, 2018, Plaintiff was examined by Defendants Howard and Grahn, and they placed a split cast and ace bandage. They informed Plaintiff that the MRI had not been approved. Plaintiff was scheduled for another follow-up in two weeks, on February 19, 2018.

On February 19, Plaintiff was informed that his follow-up was rescheduled, which Plaintiff believes was because of the grievances he filed. On February 22, he was called to see Defendant Howard. Remaining seated behind her desk, Howard informed Plaintiff that she did not see any additional swelling. Plaintiff objected, saying Howard could not see from behind the desk. Defendant Howard was agitated by Plaintiff's remark, but she got up from the desk and examined Plaintiff's ankle. When she realized that the swelling had not gone down, Howard began to move Plaintiff's ankle in various directions, allegedly causing terrible pain. Howard called Defendant Grahn to assist. Defendant Howard told Grahn to order a CT scan. Grahn said that Plaintiff needed an MRI instead, and indicated that Howard should call a different person in order to get the approval. Defendant Howard then discontinued Plaintiff's in-cell meals, forcing Plaintiff

to walk to the chow hall for four days without crutches. Custody officers took pity on him and ordered meals in until ordered to stop by health care.

On February 27, 2018, Plaintiff's crutches were returned, but his meals-in status was not reinstated. When Sergeant Cunningham saw Plaintiff attempting to walk to the dining hall, he asked why Plaintiff did not have a meals-in detail. Plaintiff responded that Defendant Howard had cancelled it. Cunningham stated, "That's her way of retaliating on you[.] I'll order you a tray and have a talk with health care[,] because I'm at risk if a fight broke out and you were injured." (Pl.'s Aff. in Supp. of Compl., ECF No.1-1, PageID.18.) Cunningham ordered meals-in for both second and third-shift food service.

On March 13, 2018, Plaintiff was scheduled to be taken to Legend Hospital for an MRI, but a time change resulted in officers being late to take Plaintiff to the appointment. On March 29, Plaintiff was taken for an MRI. When the MRI technician learned that the injury had occurred six months earlier, the tech responded that it would be difficult to get the best reading because of the delay.

When Plaintiff returned to prison from the MRI, he asked Defendant Nurse Mulnix to change his ace wraps. Mulnix was doing so when Defendant Howard arrived. When the ace wrap was removed, Defendant Mulnix noticed the terrible condition of Plaintiff's ankle and stated, "[T]here's something wrong here." (*Id.*, PageID.20.) Defendant Howard simply walked to her office, purportedly to read the MRI report. Mulnix informed Plaintiff that he would be notified about the results of the MRI on April 2, 2018.

On March 20, 2018, Nurse Waber went over the MRI results with Plaintiff, informing Plaintiff that the MRI showed no ligament tears or bone fracture. On April 2, 2018, Nurse Slusher examined Plaintiff. When she saw Plaintiff's ankle, she called Defendant Howard

over to look. Howard stated that there was nothing wrong with the ankle, other than it being frozen. Defendant Howard ordered Plaintiff a cane for two days. When Plaintiff tried to explain that something worse was going on, Howard ordered Plaintiff out of health care.

On April 7, 2018, Plaintiff was rushed to Sparrow Hospital with seriously high blood pressure, allegedly triggered by the painful ankle, and he was subsequently admitted to McLaren Hospital. The hospital conducted a battery of CT scans. McLaren Hospital Dr. Bohner told Plaintiff that he had severe nerve damage to his ankle and that the prison should have conducted an EMG test much earlier. He ordered Neurontin to treat Plaintiff's pain. When Plaintiff was released from McLaren Hospital on April 10, 2018, Defendant Randal informed him that he would not be given the Neurontin, because Defendant Corizon would not approve it. Plaintiff was continued on Naproxen.

On April 16, 2018, Plaintiff was scheduled to be interviewed by Defendant Howard, and Defendant Deeren was supposed to sit in. Before Deeren arrived, Defendant Howard told Plaintiff, "That little stunt you pulled, getting a C.T. scan cost the state one million dollars." (*Id.*, PageID.22.) Defendant Howard then reviewed the four test reports from McLaren and told Plaintiff that they were all good. Howard advised that she would be increasing his Linsinopril from 20 to 40 mg, but she would not provide the Neurontin or Lidocaine prescribed by Dr. Bohner. Howard also discontinued the Naproxen.

On May 17, 2018, Plaintiff was again examined by Defendants Howard, Deeren and Grahn. Howard expressed concern about Plaintiff's continued high blood pressure, which allegedly was triggered by the severe ankle pain. Defendant Howard asked Defendant Grahn to perform a test on Plaintiff's arms and ankle, but Defendant Grahn reminded Plaintiff that the MRI had shown no bone fractures of ligament tears. When Plaintiff explained that Dr. Bohner had told

5

him that he had severe nerve damage to his ankle, all three Defendants became irate and ordered him out of health care.

On June 5, 2018, Plaintiff was again called to see Defendant Howard, at which time Howard finally admitted that Plaintiff had suffered severe nerve damage. At that time, Howard switched Plaintiff's medication to Cymbalta, an antidepressant, which Plaintiff claims has nothing to do with treating pain.

Plaintiff alleges that Defendants have been deliberately indifferent to his serious medical needs and have retaliated against him for filing grievances by denying necessary medical equipment, in-cell meals, and pain relievers. Plaintiff also alleges state-law claims of gross negligence and intentional infliction of emotional distress. Plaintiff alleges that he continues to suffer serious untreated pain.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately

indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff's only allegation against Defendant Nurse Mulnix is that, on March 29, 2018, Plaintiff asked Mulnix to change his ace wrap, which she did. While changing the wrap, Defendant Mulnix noticed the terrible condition of Plaintiff's ankle and told Defendant Dr. Howard, "[T]here's something wrong here." (*Id.*, PageID.20.) Defendant Howard walked to her office and allegedly began to read the MRI report. At that point, Mulnix informed Plaintiff that he would be notified about the results of the MRI three days later, on April 2, 2018.

Nothing about Plaintiff's allegation against Nurse Mulnix demonstrates deliberate indifference. According to the complaint, Defendant Mulnix saw Plaintiff only once, at which time Mulnix changed the ace wrap, as requested. Mulnix, a nurse, also pointed out to the doctor, her superior, that there was something wrong with Plaintiff's ankle. She then advised Plaintiff that he would receive the results of the MRI in three days. Mulnix therefore provided treatment to Plaintiff to the extent that he asked and did as much as she could to apprise the doctor of her own perception of the seriousness of the injury. The fact that Mulnix told Plaintiff that he would hear the results of his test within three days of the performance of those tests does not support an inference that Plaintiff faced a risk of substantial harm from the delay or that Defendant Mulnix appreciated such a risk. Plaintiff's allegations therefore fail to state an Eighth Amendment claim against Defendant Mulnix.

To the extent that Plaintiff alleges that Defendant Mulnix retaliated against him, he also fails to state a claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was

motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff utterly fails to allege that Defendant Mulnix took adverse action against him. Advising Plaintiff that he could expect to receive the results of his MRI within three days of its performance does not amount to adverse action. Moreover, Plaintiff makes no allegation that Mulnix in any way prolonged the period before Plaintiff would be advised of the results of his MRI. Plaintiff therefore fails to state a retaliation claim against Defendant Mulnix.

To the extent Plaintiff asserts that Defendant Mulnix violated state law, this Court declines to exercise supplemental jurisdiction. Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits. *See Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted*, 927 F.2d 909, 917 (6th Cir. 1991); *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998). Accordingly, because the Court dismisses Plaintiff' federal claims against Defendant Mulnix with prejudice at this early stage, Plaintiff's state law claims against Mulnix will be dismissed without prejudice.

### III. Motion for Preliminary Injunction

Also before the Court is Plaintiff's motion for preliminary injunction (ECF No. 3). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has

established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal.*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432 at 438 n.3, (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Although Plaintiff's allegations may entitle him to service of some portion of the complaint, it is not at all clear from Plaintiff's *pro se* complaint that Plaintiff has a substantial likelihood of success on his Eighth Amendment and retaliation claims.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. Plaintiff's own allegations demonstrate that

11

Defendants have now acknowledged that he suffered nerve damage. He fails to allege that Defendants will fail to take action to treat that damage.

Further, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning management of prisoners are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here. Accordingly, Plaintiff's motion for preliminary relief will be denied.

IV. Motion to Serve the Complaint

Plaintiff has filed a motion to serve the complaint (ECF No. 4). In his motion, Plaintiff argues that, as an indigent prisoner, he lacks the means to effect service on Defendants. As the Court advised Plaintiff in its motion granting leave to proceed *in forma pauperis* (ECF No. 4), because he has been granted pauper status, any pleadings that are ordered served will be served by the United States Marshal at the expense of the United States government. As a consequence, the motion to serve the complaint (ECF No. 4) will be denied as moot.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendant Mulnix should be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss Plaintiff's state-law claims against Mulnix without prejudice. In addition, the Court will deny Plaintiff's motion for preliminary injunction (ECF No. 3).

An order consistent with this opinion will be entered.

Dated: December 4, 2018 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge